NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WESTWOOD PRODUCTS, INC., | : | Civil Action No.: 10-3605 (MLC) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | MEMORANDUM OPINION |
| | : | AND ORDER |
| GREAT AMERICAN E & S INS. CO., | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

ARPERT, U.S.M.J

## I.       INTRODUCTION

This matter having come before the Court on a Motion by Defendant Great American E&S Insurance Company ("Defendant") to compel "non-party Norman Spencer McKernan Agency ("NSM") to produce documents requested in a subpoena issued by Defendant pursuant to Rule 45 of the Federal Rules of Civil Procedure...which NSM has improperly withheld or redacted on the purported grounds of work product...and awarding Defendant...costs and attorney's fees [dkt. entry. no. 13], returnable June 6, 2011.  Plaintiff Westwood Products, Inc. ("Plaintiff" or "Westwood") filed a letter on May 27, 2011 joining Defendant's Motion.  NSM filed opposition on May 27, 2011.  Defendant filed a reply brief on June 3, 2011.  For the reasons stated herein, Defendant's Motion is granted in part and denied in part.

## II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 12, 2008, "Plaintiff was sued in the Ontario Superior Court of Justice by Raymond and Mary Joanne Wilson ("Wilson") and Carol Fumerton ("Wilson and Fumerton Action") in connection with two incidents of environmental contamination that occurred during a period encompassing October 2006 to January 2007, in which heating oil allegedly leaked from

the fill pipes at the neighboring Wilson and Fumerton mobile homes". *See* Pl.'s Compl., dkt. entry no. 1 at 2. "The resulting oil spill caused substantial soil contamination". *Id.* "Plaintiff supplied a filter that allegedly failed and allegedly contributed to the cause of the spill" and thus, the "Wilson and Fumerton Action alleges that Plaintiff, among others, is liable for the property damage and costs of cleaning up the contamination" in excess of $2,000,000. *Id.* at 2-3.

Plaintiff alleges that Defendant issued a policy to Plaintiff covering the period January 24, 2006 to January 24, 2007 which provided liability coverage to Plaintiff with property damage limits of $1,000,000. *Id.* at 2. Plaintiff maintains that the policy "provides Product/Completed Operations Hazard insurance...for claims of property damage occurring away from Plaintiff's premises and arising out of Plaintiff's products or work". *Id.* Plaintiff further contends that "before the inception of the policy, Plaintiff's President inquired of Plaintiff's insurance broker, Technical Insurance Company ("TIC"), whether the policy would provide coverage in the event of a claim that a Westwood oil filter were to leak causing a spill and environmental contamination". *Id.* at 3. At that time, Plaintiff "informed TIC that, if the standard form 'Pollution Exclusion' that appeared in the policy excluded coverage for such claims, then the policy would be unacceptable". *Id.* Plaintiff alleges that in response, "TIC...inquired of NSM, believed to be the broker that placed the policy with Westwood's broker, TIC, whether the policy would provide coverage in the event of a claim that a Westwood filter failed and caused environmental contamination". *Id.* Plaintiff alleges that "[o]n January 25, 2005, Bryan Kissinger ("Kissinger") of NSM wrote an email to Florence Liebowitz ("Liebowitz") of TIC as follows":

> Florence,
> Per my conversation with the Underwriter, he and I have come to the agreement that the Pollution Exclusion is not apllicable [sic] to the Products Coverage.
> For example, if a filter (that the insured sold) were to leak and spill oil, there would be coverage. The claim would be handled. If a

tank on the insured's premises were to spill, there would be no
coverage.
I hope this helps.
Bryan Kissinger

*Id.*

After receiving a letter on July 9, 2007 from "Wilson's insurance carrier...describing the
oil leak at the Wilson residence and advising Plaintiff to place its insurance company on notice
of...[the] potential claim against Plaintiff", Plaintiff "notified Defendant...and requested that
Defendant protect [its] interests through the liability coverage provided by the policy". *Id.* at 4.
On September 7, 2007, "Defendant denied all responsibility under the policy, citing, among other
provisions, the so-called Absolute Pollution Exclusion that appears in the policy". *Id.* Plaintiff
alleges that when it "requested that Defendant reconsider its position...in light of the January 25,
2006 [sic] email correspondence from Kissinger, Defendant retained Rivkin Radler as coverage
counsel". *Id.* In a letter dated July 1, 2008, "Rivkin Radler reiterated Defendant's position that
the so-called Absolute Pollution Exclusion in the policy excluded coverage for the contamination
of the Wilson and Fumerton properties". *Id.* Thereafter, Plaintiff "notified Defendant of
the...[Wilson and Fumerton Action] in Canada and requested that Defendant defend Plaintiff
against the claims in that action". *Id.* Again, by letter dated April 30, 2009, "Rivkin Radler, on
behalf of Defendant, denied all coverage, citing, among other provisions, the so-called Absolute
Pollution Exclusion in the policy". *Id.*

On July 16, 2010, Plaintiff filed a Complaint seeking a declaratory judgment against
Defendant alleging breach of contract related to the insurance policy at issue. *Id.* at 1-6. Plaintiff
alleges that "Defendant's denial of coverage under the circumstances does not comport with New
Jersey law" because "New Jersey courts interpreting the so-called Absolute Pollution Exclusion
that appears in the policy have ruled that the exclusion applies only to traditional environmental

3

pollution events, such as contamination resulting from waste disposal, and not to the kinds of releases alleged in the Wilson and Fumerton Action". *Id.* at 5. Further, Plaintiff alleges that "Defendant is also estopped from denying coverage in this case...because of the statements Defendant's underwriter made to NSM in connection with the application of the so-called Absolute Pollution Exclusion to the circumstances of this case". *Id.*

On February 17, 2011, "Defendant served a subpoena....on NSM....as the broker involved in the procurement of the...policy at issue in the subject action". *See* Def.'s Affirmation ("Aff.") of Michael A. Kotula ("Kotula"), dkt. entry no. 13-2 at 1-2. "The subpoena called for the production of documents, including, without limitation, communications and correspondence concerning the negotiation and procurement of the...[insurance policy at issue]" in addition to "all documents related to any communications NSM has had with its Errors and Omissions insurer relating to Plaintiff". *Id.* at 2. Defendant states that in response, "[o]n March 24, 2011, NSM produced certain documents" but also "withheld, or redacted material from, twenty-three documents on the grounds that they constituted attorney work product". *Id.* Defendant maintains that the "documents withheld or redacted include emails and letters spanning the time period from 2007 to 2010 and containing both internal communications among NSM employees and external communications between NSM and persons employed by unrelated companies". *Id.* Defendant contends that the "documents withheld or redacted are clearly communications between business people who are not attorneys" and "there is nothing on the...[privilege] log indicating that the documents contain any thoughts or mental impressions of counsel, or were prepared by or at the direction of counsel". *Id.* Further, Defendant contends that "some of the communications being withheld are external communications with persons outside of NSM" such as employees of TIC, "a totally separate entity that is neither controlled by...nor affiliated

with...NSM...[and an entity which] has taken an adversarial position to NSM with respect to the negotiations involving the [insurance policy at issue]". *Id.* at 3. Other communications are with employees of Swiss Re, the company "which appears to have been the insurance carrier that provided Errors & Omissions coverage for NSM during the relevant period of time". *Id.* In addition to production "of the documents listed on NSM's privilege log", Defendant "requests...costs and attorney's fees incurred in making the present motion". *Id.* at 4.

NSM maintains that it "redacted certain portions of responsive documents on the basis that they were protected by the work-product privilege". *See* NSM's Opp'n Br., dkt. entry no. 16 at 1. "These redactions fall into three different categories: (1) email communications between NSM and TIC, Plaintiff's retail broker, regarding a potential E&O claim by Plaintiff against NSM; (2) email communications between NSM and Brian Butcher, Esquire ("Butcher") of Swiss Re Insurance ("SRe"), NSM's E&O carrier, regarding a potential E&O claim by Plaintiff against NSM; and (3) email communications between NSM representatives regarding a potential E&O claim by Plaintiff against NSM". *Id.* at 1-2.

Based upon the fact that the parties were unable to reach an agreement with respect to the disputed materials, Defendant filed the present Motion on May 13, 2011. *See* dkt. entry no. 13.

### A.   Defendant's Arguments in Support of the Motion

#### 1.   NSM has failed to meet its burden of proving internal and external communications among various business people are protected from disclosure under the attorney work product doctrine.

Defendant notes that "NSM has not argued that the documents are irrelevant or not likely to lead to the discovery of admissible evidence" but rather, "has withheld the documents...or redacted material from the documents...solely on the basis that the documents are protected by the work product doctrine". *See* Def.'s Br., dkt. entry no. 13-1 at 3. Further, Defendant notes

that "NSM's privilege log lists as the basis for its withholding or redaction as work product rather than attorney work product". *Id*. Defendant maintains that "NSM's claims of work product protection are entirely unfounded". *Id*.

Citing *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124 (3d Cir. 2000) and *Conoco, Inc. v. United States Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982), Defendant contends that "NSM, as the party asserting the work product protection, bears the burden to show the doctrine applies". *Id*. However, "[g]iven the vague description of the documents and the nature of the persons involved in the relevant communications and correspondence being withheld or redacted, NSM has...not met its burden". *Id*. at 3-4. Noting that the "attorney work product doctrine is codified in FED. R. CIV. P. 26(b)(3)(A)" and citing *In re Gabapentin Litigation*, 214 F.R.D. 178, 183-84 (D.N.J. 2003), Defendant maintains that "[c]ourts in the Third Circuit have applied a two-part test for determining whether the documents at issue should be protected under the attorney work product doctrine". *Id*. at 4. Pursuant to *Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306 (D.N.J. 2008), the "work-product doctrine requires that the materials at issue be prepared or obtained: (1) in anticipation of litigation; and (2) primarily for the purpose of litigation". *Id*. More specifically, the "anticipation of litigation element requires more than the inchoate possibility or likely chance of litigation" and "is satisfied only if the withholding party can establish an identifiable specific claim of pending litigation". *Id*. The "purpose of the litigation prong requires that the specific facts and circumstances of a given case establish that the document was prepared or obtained because of litigation and not for business or other reasons". *Id*. According to *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990), Defendant maintains that "[d]ocuments created in the ordinary course of business, even if they prove useful in subsequent litigation, are

6

not protected by the work product doctrine".  *Id.*

Citing *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003), Defendant contends that "the purpose of the attorney work product protection is to promote the adversary system by sheltering an attorney's mental process so as to provide a safe area to analyze and prepare a case".  *Id.* at 5.  Citing *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991) and *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1946), Defendant further contends that "the attorney work product doctrine protects the confidentiality of materials prepared by or on behalf of attorneys in anticipation of litigation and thereby advances the adversary system by enabling attorneys to prepare cases without fear that those materials will be used against their clients".  *Id.*  Pursuant to *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998), *United States v. Nobles*, 422 U.S. 225, 238-39 (1975), and *Cooper Health Sys. v. Virtua Health, Inc.*, 259 F.R.D. 208 (D.N.J. 2009), Defendant states that "courts have clearly held that where...documents were neither prepared by or for attorneys, attorney work product protection will be denied".  *Id.*  "Where the author of the document is not an attorney, the Third Circuit has limited work-product protection to materials prepared by an attorney's agent, but only if that agent acts at the attorney's direction in creating such documents".  *Id.*  Defendant compares the present dispute to that which existed in *Cooper Health*, where "the court found that email communications between representatives of non-parties to that case regarding the lawsuit at issue were not work product because they were neither prepared by or for attorneys, and no evidence was presented that those who had prepared the emails were acting as agents or consultants for attorneys".  *Id.*

"As was the case with the subpoenaed non-party in *Cooper Health*, NSM has...failed to support its claim that the documents on its privilege log fall within the protection of attorney

work product". *Id*. Noting that "the emails and other correspondence on NSM's privilege log consist solely of communications among various business people...with no attorneys copied on any of the documents", Defendant argues that "NSM has not provided any evidence that any of the documents were prepared at the direction of or for the benefit of counsel, or that any of the authors of those documents were acting as the agents of counsel". *Id*. at 5-6. Under these circumstances, Defendant maintains that the Court should grants its Motion. *Id*. at 6.

      2.      **Pursuant to FED. R. CIV. P. 37(a)(5)(A), Defendant is entitled to attorneys' fees and costs related to filing this Motion.**

Pursuant to FED. R. CIV. P. 37(a)(5)(A) and as set forth above, Defendant maintains that "NSM's claim of work product protection is completely unjustified". *Id*. Defendant notes that it "tried in good faith on several occasions to obtain from NSM discovery of the documents prior to making this Motion, but NSM refused" production. *Id*. "Accordingly, Defendant respectfully submits that it is entitled to an Order requiring NSM to reimburse Defendant for its...[attorneys' fees and costs] incurred in making the present Motion...". *Id*.

      B.      **<u>NSM's Arguments in Opposition to the Motion</u>**

Initially, NSM notes that Defendant "argues that the work-product privilege is inapplicable to the documents withheld by NSM" based upon the fact "that the documents at issue were not prepared by or for attorneys, or at an attorney's direction". *See* NSM's Opp'n Br., dkt. entry no. 16 at 2. NSM asserts that Defendant's argument "fails for two reasons: (1) it is contrary to the plain language of FED. R. CIV. P. 26(b)(3); and (2) it is unsupported by federal precedent". *Id*. In addition, NSM maintains that Defendant "is not entitled to costs and fees because NSM's objection is substantially justified". *Id*.

      1.      **NSM's objection is valid because the work-product privilege protects documents prepared in anticipation of litigation by and for a party, and by and for a party's non-attorney representative.**

8

Citing FED. R. CIV. P. 26(b)(3), NSM contends that "a party can withhold documents that were (1) prepared by or for it or its representative, (2) in anticipation of litigation". *Id*. at 2-3. Citing *In re Cendant Corp. Securities Litig.*, 343 F.3d 658, 663-65 (3d Cir. 2003), NSM maintains that the "requesting party can overcome this privilege only if it demonstrates the requisite showing of need" based upon the two tier protection provided by Rule 26(b)(3). *Id*. at 3. "First, work prepared in anticipation of litigation is discoverable only upon a showing of need and hardship". *Id*. "Second, core or opinion work product that encompasses the mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation is generally afforded near absolute protection from discovery". *Id*. Thus, NSM argues that "core or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances". *Id*.

Pursuant to FED. R. CIV. P. 26(b)(3)(A), Defendant maintains that the first requirement is set forth in "the plain language of [the] Rule...[and] clearly protects documents prepared in anticipation of litigation (1) by the party, (2) by the party's representative, (3) for the party, and (4) for the party's representative". *Id*. NSM asserts that "[a]ll of [its] redactions fall into these categories". *Id*. Defendant maintains that the "second requirement of Rule 26(b)(3) is that the document must be prepared in anticipation of litigation" and notes that in *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979), the "Third Circuit has interpreted this phrase to require that the document be prepared or obtained because of the prospect of litigation". *Id*. at 4. Although Defendant "does not argue that the documents do not satisfy this requirement, NSM...addresses this issue for the sake of completeness". *Id*.

NSM states that the "first category of [documents]...consists of...written correspondence

from Plaintiff's retail agent, Technical Insurance Services [sic], which notifies NSM of the lawsuit filed against Plaintiff and requests that NSM notify its own E&O carrier of a potential claim against it". *Id*. NSM argues that "[t]his email clearly was prepared for NSM...and therefore satisfies the first requirement of Rule 26(b)(3)(A)". *Id*. Further, NSM argues that "its sole purpose was to prepare NSM for the prospect of litigation...and therefore the second requirement of the Rule is satisfied". *Id*. NSM maintains that it "properly asserted the work-product privilege" for these documents. *Id*.

NSM states that the "second category of documents involves communications by Butcher of SRe, NSM's E&O carrier, to NSM regarding the potential E&O claim against NSM". *Id*. NSM argues that these "documents were prepared for NSM and by NSM's representative, i.e., its insurer...[and] [t]herefore...the first requirement of Rule 26(b)(3)(A) is satisfied on two different grounds". *Id*. Further, NSM argues that the documents include "a letter from SRe counsel to NSM acknowledging NSM's notice of a potential claim and providing legal advice as to how it should proceed forward with handling the potential litigation that may ensue" and "correspondence from SRe counsel that provides legal advice to NSM regarding whether or how it should respond to a letter from TIC's insurance carrier regarding the potential claim against NSM". *Id*. at 4-5. "These documents clearly were prepared because of the prospect of litigation[,] ...[and] contain legal advice" and therefore "satisfy the second requirement of the Rule". *Id*. at 5. NSM maintains that it "properly asserted work-product privilege" for these documents. *Id*.

NSM states that the "third category of documents involves correspondence and memos prepared by NSM" including: "emails and memos exchanged among NSM employees; emails and correspondence to Butcher...; and NSM's entries in its Activity Log". *Id*. NSM argues that

these "documents were prepared by NSM" or "were prepared for NSM's representative" and "therefore...satisfy the first requirement of Rule 26(b)(3)(A)".  *Id*.  Further, NSM argues that these "documents contain information that either acknowledge the existence of a potential E&O claim against NSM, contain opinions regarding the merits of the potential claim, and/or were prepared for the purpose of compiling information in preparation of defense of the potential claim".  *Id*.  "[T]hese documents clearly satisfy the second requirement of the Rule".  *Id*.  NSM maintains that it "properly asserted the work-product privilege" for these documents.  *Id*.

NSM notes that Defendant "argues that Rule 26(b)(3) only applies to attorney work product and therefore...does not protect the documents at issue because no attorneys were copied on the communications...and none of them were prepared at the direction of or for the benefit of counsel".  *Id*.  NSM further notes that Defendant "attempts to argue that Rule 26(b)(3) only applies to (1) work product prepared by an attorney, or (2) work product prepared by a nonattorney for an attorney at the attorney's direction".  *Id*.  NSM maintains that Defendant's arguments fail because they are "inconsistent with the plain language of Rule 26(b)(3) and federal precedent, which extend the privilege to work product prepared by the party and its non-attorney representatives".  *Id*. at 5-6.  Indeed, "there is absolutely no language in Rule 26(b)(3)(A) that mandates documents prepared by non-attorneys be done so for the attorney and at the attorney's direction" and Defendant "completely ignores the fact that the Rule expressly protects documents prepared by a party for the party...and documents prepared by the party for the party's representative".  *Id*. at 6.  "Under Defendant's interpretation, the reference to party is rendered meaningless if the document can only be prepared by or for the attorney, i.e., the party's representative".  *Id*.  Further, NSM asserts that Defendant's interpretation is contrary to the Advisory Committee Notes related to Rule 26(b)(3).  *Id*.

11

NSM contends that "multiple Circuit Courts have...held that the privilege extends to work-product prepared by and for non-attorneys" and cites *United Coal Companies v. Powell Construction Company*, 839 F.2d 958, 966 (3d Cir. 1988) for the proposition that "the communications between the plaintiff's insurance adjuster and its insurance company, lay person to lay person...not involving a lawyer, were protected mental impressions" as "the district court's ruling that the work product privilege is inapplicable to documents containing mental impressions of anyone other than a lawyer...[was held to be] inconsistent with the plain language of the rule". *Id*. at 6-7.  Citing *In re Cendant Corp. Securities Litig.*, 343 F.3d 658, 666 (3d Cir. 2003), *Ford Motor Co. v. Kelly*, 110 F.3d 954, 967 (3d Cir. 1997), *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252 (3d Cir. 1993), *Willingham v. Ashcroft*, 228 F.R.D. 1, 4-7 (D.C. Cir. 2005), *Coregis Insur. Co. v. Law Offices of Carole F. Kafrissen*, 57 Fed. Appx. 58, 60 (3d Cir. 2003), *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508 (4th Cir. 1993), *Nat'l Union Fire Insur. Co. of Pittsburgh, PA. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 986 (4th Cir. 1992), *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979), *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1219 (4th Cir. 1976), and *Bredice v. Doctors Hosp., Inc.*, 50 F.R.D. 249, 250-51 (D.C. Cir. 1970), NSM maintains that "the Third Circuit...[has] held that the work product doctrine extends to materials compiled by a non-attorney, who, as the agent of the party or the party's attorney, assists the attorney in trial preparation".  *Id*. at 7-8.

NSM argues that Defendant "mischaracterizes the holdings" of *In re Grand Jury (Impounded)*, 138 F.3d 978, 979-81 (3d Cir. 1998) and *Cooper Health System v. Virtua Health, Inc.*, 259 F.R.D. 208-14 (D.N.J. 2009).  *Id*. at 8.  In *Grand Jury*, "the defendant's attorney instructed him to write down all of his thoughts and memories relating to the victim who had

prompted the FBI's investigation against him" and the issue "was whether the defendant had waived the privilege, not whether the privilege applied". *Id*. The Third Circuit explained that the scope of the privilege "can extend to materials prepared by an attorney's agent...if that agent acts at the attorney's direction in creating such documents" and did so "to demonstrate that the privilege was applicable to the document at issue...[rather than] an analysis of the scope of the privilege". *Id*. NSM maintains that The Third Circuit's "use of...[the word] 'can' demonstrates that...[it] was merely providing one circumstance where the privilege would extend beyond attorneys" and "does not limit the privilege to this one circumstance". *Id*. Based on these facts, NSM maintains that Defendant "mischaracterizes the holding in *Grand Jury* when it states that the privilege protects materials prepared by an attorney's agent...only if that agent acts at the attorney's direction". *Id*. at 8-9. Separately, in *Cooper Health*, the defendant "had hired advertising agency and nonparty Star Group ("Star") for its advertising" and, in turn, Star "had hired non party Plesser & Clifford ("Plesser")...for its services". *Id*. at 9. "Plesser refused to disclose emails between its non-attorney employees and Star's non-attorney employees regarding the lawsuit between...plaintiff and defendant". *Id*. Although "the court concluded that these emails were not protected because they were not attorney work product", its "analysis of these emails is sparse" and its "holding is clearly inapposite because the emails were not prepared by or for Plesser in anticipation of litigation involving Plesser". *Id*. Rather, the emails "merely involved...discussions regarding the claims between...plaintiff and defendant". *Id*. Based on these facts, NSM maintains that Defendant mischaracterizes the holding of *Cooper Health* and its application here, as "NSM's documents were prepared in anticipation of litigation against NSM". *Id*.

       **2.**     **Defendant is not entitled to attorneys' fees and costs because NSM's nondisclosure was substantially justified.**

NSM notes that Defendant "attempts to argue that it is entitled to costs and fees under FED. R. CIV. P. 37(a)(5)(A) because NSM's assertion of the work product privilege was completely unjustified" as the privilege "only applies to documents prepared by or for attorneys". *Id*.  NSM maintains that, as set forth above, "the plain language of Rule 26(b)(3) clearly does not place such limitation on the privilege" and "there is considerable Circuit Court precedent...that interprets the privilege to protect documents prepared by and/or for NSM...and documents prepared by and/or for non-attorney representatives of NSM".  *Id*. at 9-10.  "As such, NSM was substantially justified in asserting this privilege".  *Id*. at 10.

## III.  DISCUSSION

### A.     Legal Standards

#### 1.      Requests for Production of Documents

Pursuant to FED. R. CIV. P. 34(c),

> Nonparties.   As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection.

Pursuant to FED. R. CIV. P. 26(b)(5),

> (A) Information Withheld.  When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

>> (i) expressly make the claim; and

>> (ii)  describe  the  nature  of  the  documents, communications, or tangible things not produced or disclosed – and to do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Pursuant to L. CIV. R. 34.1,

> Where a claim of privilege is asserted in responding or objecting

> to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked.  When any privilege is claimed, the party asserting it shall indicate, as to the information requested, whether any such documents exist.

Importantly, the Court notes that "it is not sufficient to merely state a generalized objection; instead, the objecting party must demonstrate that a particularized harm is likely to occur if the discovery be had by the party seeking it".  *G-69 v. Degnan*, 130 F.R.D. 326, 331; *see also Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982), 8 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2035 at 264-265.   "The Third Circuit has rejected broadside invocations of privilege which fail to designate with particularity the specific documents or file to which the claim of privilege applies".  *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1209-10 (D.N.J. 1996); *see also United States v. O'Neill*, 619 F.2d 222, 225 (3d Cir. 1980).  In order to analyze a privilege claim, some courts have required the asserting party to provide "the date of the document, the name of its author, the name of its recipient, the name of all people given copies of the document, the subject of the document and the privilege or privileges asserted".  *Wei v. Bodner*, 127 F.R.D. 91, 96 (D.N.J. 1989); *see also Jaroslawicz v. Engelhard Corp.*, 115 F.R.D. 515, 516 (D.N.J. 1987); *Kelchner v. International Playtex, Inc.*, 116 F.R.D. 469 (M.D. Pa. 1987); *United States v. Exxon Corp.*, 87 F.R.D. 624 (D.D.C. 1980); *Bierman v. Marcus*, 122 F. Supp. 250 (D.N.J. 1954).

### 2.      Rule 45: Subpoena

Pursuant to FED. R. CIV. P. 45(d),

(d) Duties in Responding to a Subpoena.

(1) Producing Documents or Electronically Stored Information.

(A) Documents.  A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

...(2) Claiming Privilege or Protection.

(A) Information Withheld.  A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced.  If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.  The person who produced the information must preserve the information until the claim is resolved.

## 3.      Work-Product Privilege

Pursuant to FED. R. CIV. P. 26(b)(3),

(A) Documents and Tangible Things.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:

16

      (i)     they are otherwise discoverable under Rule 26(b)(1); and

      (ii)    the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

"Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Federal Rule of Civil Procedure 26(b)(3)". *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). A party may not ordinarily "discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" absent a showing by the requesting party of "substantial need for the materials to prepare its case" and an inability, "without undue hardship, [to] obtain their substantial equivalent by other means". FED. R. CIV. P. 26(b)(3)(A). "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation". FED. R. CIV. P. 26(b)(3)(B); *see also Quinn Construction, Inc. v. Skanska USA Building, Inc.*, 263 F.R.D. 190, 193 (E.D. Pa. 2009). "The work product doctrine is governed by a uniform federal standard set forth in FED. R. CIV. P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp. Securities Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003)(*quoting United States v. Nobles*, 422 U.S. 225, 238 (1975)). The Supreme Court articulated the essential nature of the doctrine in *Hickman v. Taylor*, 329 U.S. 495, 510-11

17

(1947): "In performing his various duties, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. ...This work is reflected, of course, in interviews, statements, memoranda, correspondences, briefs, mental impressions, personal belief, and countless other tangible and intangible ways."  Importantly, "waiver of work-product protection occurs only when a disclosure enables an adversary to gain access to the information" and the "burden of establishing waiver of the work-product doctrine falls...on the party seeking to establish waiver".  *Sealed Air*, 253 F.R.D. at 311; *see also Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1428 (3d Cir. 1991); *Maldonado v. New Jersey*, 225 F.R.D. 120, 131-32 (D.N.J. 2004).

The work product doctrine is not an absolute bar to discovery of materials prepared in anticipation of litigation.  "Work product can be produced upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."  *In re Cendant*, 343 F.3d at 663.  Even if the party seeking discovery of information otherwise protected by the work product doctrine has made the requisite showing, "courts must still protect against the disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney and his agents."  *Id*.  Thus, there are "two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, 'core' or 'opinion' work product that encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from discovery' and requires a heightened showing of extraordinary circumstances".  *Id*. at 663-64; *see also In re Ford Motor Co.*, 110 F.3d 954, 962 n.7 (3d Cir. 1997); *Sporck v. Peil*, 759 F.2d 312,

316 (3d Cir. 1985); *Schneck v. International Business Machines Corp.*, 1993 WL 765638, at *4 (D.N.J. 1993); *Times of Trenton Publ'g Corp. v. Pub. Util. Serv. Corp.*, 2005 U.S. Dist. LEXIS 34624, at *12 (D.N.J. 2005).   "Federal courts have consistently ruled that the work product doctrine is not inapplicable merely because the material was prepared by or for a party's insurer or agents of the insurer".  *United Coal*, 839 F.2d at 966; *see also Railroad Salvage of Conn. Inc. v. Japan Freight Consolidators (U.S.A.), Inc.*, 97 F.R.D. 37, 41 (E.D.N.Y. 1983), *aff'd*, 779 F.2d 38 (2d Cir. 1985); *Home Ins. Co. v. Ballenger Corp.*, 74 F.R.D. 93, 101 (N.D. Ga. 1977); *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 772-73 (M.D. Pa. 1985); *Hoffman v. Owens-Illinois Glass Co.*, 107 F.R.D. 793, 794 (D. Mass. 1985); *Briggs & Stratton Corp. v. Concrete Sales & Servs.*, 174 F.R.D. 506, 508 (M.D. Ga. 1997).  Indeed, the work-product doctrine "is an intensely practical one, grounded in the realities of litigation in our adversary system.  One of those realities is that attorneys must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial.  It is therefore necessary that the doctrine protect materials prepared by agents for the attorney as well as those prepared by the attorney himself".  *Id*.  "Counsel for an insurer may invoke work product protection in favor of documents prepared by it in anticipation of litigation even though the insurer is not a named party in an action".  *Id*.; *see also Basinger*, 107 F.R.D. at 772-72.  However, an "insurance company may not insulate itself from discovery by hiring an attorney to conduct ordinary claims investigations".  *First Aviation Servs. v. Gulf Ins. Co.*, 205 F.R.D. 65, 69 (D. Conn. 2001).  "Documents created by an insurer, on behalf of a party and in anticipation of litigation, are work product protected from disclosure under Rule 26(b)(3). [However,] [t]here is no blanket protection for an insurer's claims files...".  *Kirschbaum v. WRGSB Assocs.*, 1998 U.S. Dist. LEXIS 8860, at *3 (E.D. Pa. 1998).  Separately, "[d]ocuments created on behalf of a non-party are not protected by the work

19

product rule" because the "rule exists to protect the privacy of the preparations of the attorneys and agents engaged in litigation". *Id.*; *see also Grider v. Keystone Health Plan Cent., Inc.*, 2005 U.S. Dist. 44069 (M.D. Pa. 2005).

Importantly, "the party asserting work product protection bears the burden to show the doctrine applies". *Sealed Air*, 253 F.R.D. at 306; *see also Conoco, Ins. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982). The Third Circuit has adopted a "two part test for ascertaining whether the documents or things at issue should be protected under the work-product doctrine". *Id.*; *see also In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003); *Muse-Freeman v. Bhatti*, 2008 WL 2165147, at *1 (D.N.J. 2008); *Paris v. R.P. Scherer Corp.*, 2006 WL 1982876, at *2 (D.N.J. 2006). The first inquiry is "the reasonable anticipation test, which requires that the court determine whether litigation could reasonably have been anticipated...[with the] relevant inquiry [being] whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation". *Id.*; *see also In re Gabapentin*, 214 F.R.D. at 183; *Maertin v. Armstrong World Indus.*, 172 F.R.D. 143, 148 (D.N.J. 1997); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993); *Rockwell Int'l*, 897 F.2d at 1266. "Although the litigation need not be imminent, there must be an identifiable specific claim of impending litigation". *Id.*; *see also Rockwell Int'l*, 897 F.2d at 1266; *Maertin*, 172 F.R.D. at 148; *Leonen*, 135 F.R.D. at 97. The second inquiry "is whether the documents were prepared primarily for the purpose of litigation, ...as documents prepared for other purposes that prove useful in subsequent litigation are not attorney work-product". *Id.* at 307; *see also Paris*, 2006 WL 1982876, at *2; *In re Gabapentin*, 214 F.R.D. at 184. "Documents created in the ordinary course of business, even if useful in subsequent litigation, are not protected by the

work-product doctrine". *Id.*; *see also Rockwell Int'l*, 897 F.2d at 1265-66.  Thus, "even where the reasonable anticipation of litigation is established, whether the document comes within the purview of the work-product doctrine still depends primarily on the reason or purpose for the document's production". *Id.*; *In re Gabapentin*, 214 F.R.D. at 184.  "To be protected by the work-product doctrine, a document must have been created for use at trial or because a lawyer or party reasonably anticipated that specific litigation would occur and prepared the document to advance the party's interest in the successful resolution of that litigation". *Willingham v. Ashcroft*, 228 F.R.D. 1, 6 (D.C. Cir. 2005).  "The decision that a document is protected by the work product doctrine is not a linear conclusion and is necessarily dependent on both the content of the document and the factual showing by the party seeking disclosure". *Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C.*, 57 Fed. Appx. 58, 60 (3d Cir. 2003).  The "work product doctrine does not apply when an attorney undertakes an internal investigation to comply with internal policy" but rather, "only applies where the materials in question were prepared in anticipation of litigation and not in the course of an investigation to discover the precise facts of a particular incident". *Freedman & Gersten, LLP v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS 130167, at *19 (D.N.J. 2010).  "[T]here is no privilege at all unless the document was initially prepared in contemplation of litigation, or in the course of preparing for trial" such that a "litigant must demonstrate that documents were created with a specific claim supported by concrete facts which would likely lead to litigation in mind, ...not merely assembled in the ordinary course of business or for other nonlitigation purposes". *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1515 (D.C. Cir. 1993).  "Courts applying these standards have frequently declined to find insured-insurer communications within the penumbra of work-product doctrine". *Id.*

The Court notes that with respect to insurance cases,

> [C]ourts have observed that the application of the work product doctrine to documents prepared by insurance companies during claims investigations is difficult because the nature of the insurance business is such that an insurance company must investigate a claim prior to determining whether to pay its insured, and thus pre-litigation investigation is the routine business of insurance companies. ...[Although] a company's investigation may shift from the ordinary course of business to an anticipation of litigation, there is no hard and fast rule as to when this occurs; rather, a fact-specific inquiry is required to determine when this shift occurs. ...[Courts have] considered factors including the retention of an attorney, although hiring an attorney should not necessarily insulate an insurance company behind work product privilege; whether the parties were still jointly exploring ways to resolve their differences; whether either party had declared a definite position or both were still considering their positions; whether, once a position was declared, what was done would have been done for business purposes, regardless of the possibility of litigation; and what the parties' routine business practice of investigation was.

*St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 635 (N.D. Iowa 2000).

> An insurer's investigative records...[are] not subject to the work product privilege and should be presumed not to be privileged when the records pertained to the investigation before the insurer made its final decision to deny the insured's claim. It is presumed that a document or thing prepared before a final decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the insurer's business of claim determination and is not work product. Likewise, anticipation of litigation is presumed unreasonable under the Rule before a final decision is reached on the claim. The converse, of course, is presumed for documents produced after claims denial. ...When an insured presents a first party claim, he is asking for payment under the terms of the insurance contract between him and the insurance company, and the insurance company owes him a duty to adjust his claim in good faith. There is no initial contemplation of litigation. By contrast, when a liability insurer investigates a third party claim, the investigation is made in anticipation of claims which, if denied, likely will lead to litigation. The recognition of this possibility provides the insurer the impetus to gather information regarding the circumstances of the claim. ...[O]ne would expect

22

there to be more litigation on third-party claims than on direct first-party action contract actions, with a resultant increased anticipation of such litigation in the third-party context. The difference between first and third party claims is important in preserving the underlying purposes of the work product privilege. If the witness statements that a [non-party insurance company] took in investigating claims against [the defendant insured] were not protected work product, then a [third party] suing [the defendant insured] should also be entitled to obtain discovery of all the statements from [the non-party insurance company]. ...That prospect of freeloading, by both the direct and indirect routes, creates exactly the types of risks and incentives that led the Supreme Court to recognize the work product privilege in *Hickman*.

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 190 F.R.D. 532, 537-38 (S.D. Ind. 1999). Third Circuit courts "have adopted a case by case approach" in order to address concerns that "Rule 26(b)(3) was not intended to protect all insurance claim files from discovery, but, at the same time, by its very language...does protect without reference to any exception for insurance companies....materials prepared in anticipation of litigation". *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 774 (M.D. Pa. 1985).

**4.    Rule 37**

Pursuant to FED. R. CIV. P. 37,

(a) Motion for an Order Compelling Disclosure or Discovery.

(5) Payment of Expenses: Protective Orders.

(A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing). If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the Court must not order this payment if:

23

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

**B.      Defendant's Motion**

Initially, the Court notes that the Subpoena at issue in this Motion appears to have been issued by the United States District Court for the Eastern District of Pennsylvania.  *See* Def.'s Aff. of Kotula, Ex. A.  Nonetheless, neither Plaintiff, Defendant nor NSM have raised any issue with respect to this Court's jurisdiction over the subpoena at issue.  *See* FED. R. CIV. P. 45(a)-(b). Given the lack of objection, the Court deems any issue with respect to jurisdiction waived and addresses the substantive privilege claims raised by NSM in opposing the Motion.

NSM "is the insurance broker that procured the...[subject insurance] policy for Plaintiff" from Defendant (NSM's Opp'n Br. at 1) at the direction of Plaintiff's insurance broker, TIC (*see* Pl.'s Comp. at 3, ¶¶ 9-12).  More specifically, TIC served as Plaintiff's retail insurance broker while NSM served as the wholesale insurance broker that procured the insurance policy at issue for Plaintiff.  *See* dkt. entry no. 18.  There is no indication that any contractual relationship existed between TIC and NSM.  Plaintiff, Defendant and NSM have indicated that NSM had a brokerage agreement with Plaintiff which enabled NSM to submit applications for insurance to Defendant and entitled NSM to commissions with respect to the insurance policy at issue but did not provide authority for NSM to bind Defendant.  *Id*.  Importantly, Plaintiff, Defendant and NSM indicate that the brokerage agreement between NSM and Defendant provides that "any business transacted with...Defendant by...NSM shall be solely in a brokerage capacity; NSM is

the exclusive agent of its client.  NSM is an independent contractor and is not an employee or agent of Defendant and has no authority to bind or represent Defendant other than as specifically provided for in this Agreement".  *Id.*

Finally, the Court notes that Plaintiff received notification of the underlying oil leak and contamination on July 9, 2007 and subsequently put Defendant on notice of same sometime thereafter, though no later than September 7, 2007.  *See* Pl.'s Comp. at 4, ¶¶ 13-15.  NSM's Privilege Log contains documents ranging in time from September 6, 2007 through November 4, 2010, all of which cite "Work-Product" as grounds for withholding same as privileged.  *See* Def.'s Aff. of Kotula, Ex. B. NSM has represented that the three (3) categories of redactions described and withheld as privileged are: "email communications between NSM and TIC...regarding a potential E&O claim by Plaintiff against NSM" (NSM's Opp'n Br. at 1-2); "email communications between NSM and Butcher...[of SRe]...regarding a potential E&O claim by Plaintiff against NSM" (NSM's Opp'n Br. at 1-2); and "email communications between NSM representatives regarding a potential E&O claim by Plaintiff against NSM" (NSM's Opp'n Br. at 1-2).  The Court notes that neither Plaintiff nor Defendant has asserted that NSM was acting as its agent or representative at the time the materials NSM claims are privileged were drafted.

Unlike the situations referenced in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 190 F.R.D. 532, 537-38 (S.D. Ind. 1999) – where an insured presents a first party claim and the insurer asserts work product protection over investigatory materials or where a liability insurer investigates a third party claim and the liability insurer asserts work product protection over investigatory materials – in this situation a wholesale insurance broker, NSM, is asserting work product protection over correspondence drafted after being notified that the broker's client, Defendant, was disclaiming a request for coverage by an insured, Plaintiff, on an insurance

policy procured for Plaintiff by NSM.

Here, the Court finds that although NSM may have had a relationship with Defendant wherein NSM acted as Defendant's broker at the time the subject insurance policy was obtained and executed, NSM is not a party to this lawsuit and was not acting as a representative of Defendant during the period from September 6, 2007 through November 4, 2010.  *See* FED. R. CIV. P. 26(b)(3)(A); *see also* Def.'s Aff. of Kotula, Ex. B.  Unlike other situations involving the assertion of work product protection in the area of first-party or third-party insurance investigations conducted in order to determine whether coverage should be afforded to an insured and/or to determine an insured's liability in order to assess the possibility of litigation and the cost of providing a defense, in this situation NSM's only interest related to its own liability. Indeed, upon issuance of the subject insurance policy, NSM had no subsequent role or responsibilities to fulfill.  NSM was only motivated to act – and therefore draft the correspondence which it now claims to be privileged – in its own self-interest, upon notice that Defendant had disclaimed coverage under the subject insurance policy which NSM had procured, to investigate and determine its own liability rather than the liability of Plaintiff or Defendant. Pursuant to 8 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2024, at 201-201 (3rd ed.) ("Wright"), "[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit".  *See also In re California Public Utilities Com'n*, 892 F.2d 778, 781 (9th Cir. 1989); *Loustalet v. Refco, Inc.*, 154 F.R.D. 243 (C.D. Cal. 1993); *Rickman v. Deere & Co.*, 154 F.R.D. 137 (E.D. Va. 1993), *aff'd*, 36 F.3d 1093 (4th Cir. 1994); *Doubleday v. Ruh*, 149 F.R.D. 601, 605-06 (E.D. Cal. 1993); *Hawkins v. South Plain Intern. Trucks, Inc.*, 139 F.R.D. 682, 684 (D. Colo. 1991); *Bohannon v.*

*Honda Motor Co. Ltd.*, 137 F.R.D. 536 (D. Kan. 1989); *Gomez v. City of Nashua, N.H.*, 126 F.R.D. 432, 434 n.1 (D.N.H. 1989); *Chaney By and Through Guilliam v. Slack*, 99 F.R.D. 531, 533 (S.D. Ga. 1983); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974).   Further, although "[d]ocuments created by an insurer...on behalf of a party and in anticipation of litigation...are work product protected from disclosure under Rule 26(b)(3)[,] ...[d]ocuments created on behalf of a non-party are not protected by the work product rule" because "[t]here is no reason to extend this protection to a non-party". *Kirschbaum v. WRGSB Assocs.*, 1998 U.S. Dist. 8860, at *3 (E.D. Pa. 1998); *see also Hunter v. Heffernan*, 1996 U.S. Dist. LEXIS 9244 (E.D.Pa. 1996).   Given that NSM is not a named party to this lawsuit and that neither Plaintiff nor Defendant claim that NSM was acting as their agent or representative during the relevant period from September 6, 2007 through November 4, 2010, the Court finds that NSM is not a party and was not acting as Defendant's representative during the relevant period such that the protection afforded under Rule 26(b)(3) is inapplicable in this instance. Accordingly, NSM is directed to produce unredacted copies of all documents listed in its Privilege Log by **August 12, 2011**.

With respect to Defendant's request for an award of attorneys' fees and costs, the Court finds that NSM's objections were substantially justified and denies Defendant's request.

## IV.   CONCLUSION AND ORDER

The Court having considered the papers submitted and opposition thereto, and for the reasons set forth above;

**IT IS** on this 1st day of August, 2011,

**ORDERED** that Defendant's Motion to compel "non-party NSM to produce documents requested in a subpoena" [dkt. entry. no. 13] is **GRANTED** in part and **DENIED** in as set forth

above; and it is further

      **ORDERED** that the Court will conduct a telephone conference call on **<u>August 23, 2011</u>**

at **<u>11:30 a.m.</u>** to be initiated by Defendant's counsel.

                      <u>s/ *Douglas E. Arpert*</u>
                      **DOUGLAS E. ARPERT**
                      **UNITED STATES MAGISTRATE JUDGE**